**BELA SEATING COMPANY, Inc.,**
Plaintiff-Appellee,

v.

**POLORON PRODUCTS, INC.,** Defendant-Appellant.

No. 17444.

United States Court of Appeals, Seventh Circuit.

Jan. 25, 1971.

Norman Lettvin, Jacques M. Dulin Chicago, Ill., for defendant-appellant; Eugene E. Geoffrey, Jr., New York City, of counsel.

James W. Clement, Chicago, Ill., for plaintiff-appellee; Dressler, Goldsmith, Clement & Gordon, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

This is a patent infringement suit, brought by Bela Seating Company, Inc. (Bela), with the customary defenses of invalidity and non-infringement filed by defendant Poloron Products, Inc. (Poloron). Poloron also filed a defense and a counter-claim both based upon alleged patent misuse in violation of antitrust laws. The district court concluded, 297 F.Supp. 489, that Poloron had infringed eleven of eighteen claims of Junkunc Patent No. 2,954,073 in suit.[1] Judgment was for Bela, with a grant of injunctive relief and an order for compensatory damages. The court dismissed Poloron's counterclaim on the merits. Poloron has appealed. We affirm.

The patent in suit covers an inverted "Y-frame"[2] folding "tablet arm" chair. The patent has all the elements of the ordinary folding chair plus a movable tablet arm for use in writing and in folding. The tablet arm, when not in use, moves sideways from its writing position in front of the chair and pivots downward into an out-of-the-way position next to the front leg of the chair. When the chair is folded, the seat of the chair is raised and the tablet arm moves downward to a fully closed "lowermost" position in front of the chair. In unfolding, the tablet arm is lifted upward to its writing position and the seat opens cooperatively. Thus in both the

---

1. Issued in the name of Bela B. Junkunc and assigned January 1, 1965 to plaintiff Bella Seating Company, Inc.

2. In a "Y-frame" folding chair the front frame and the back legs of the chair form an inverted Y-shaped structure. In contrast, in an "X-frame" chair the front and rear legs cross to form an X-shape.

folding and unfolding operations, the tablet arm moves cooperatively with the seat of the chair. The chair is clearly important for use by institutions such as schools, hotels and clubs. The three figures below picture the chair in an unfolded position with the tablet arm moved away and downward from the seat (Figure 1), a side view of the chair completely unfolded with the tablet arm ready for use (Figure 2), and a front view of the completely closed folded position of the chair and tablet arm (Figure 3):

**FIGURE 3**

[A3535]

[A3533]  **FIGURE 1**

[A3534]  **FIGURE 2**

The district court found the patent valid, and that Poloron's accused chair read directly upon and infringed claims 1 through 6 and 14 of the Junkunc patent in suit; and that, under the doctrine of equivalency, Poloron infringed claims 7, 10, 12 and 15. Poloron does not directly challenge the conclusion of validity, but contends that the district court erred in finding infringement and also alleges several grounds on which the patent is said to be invalid and accordingly not entitled to patent monopoly protection. We shall treat *seriatim* the several grounds urged for invalidity.

## I. VALIDITY.

■  The court did not err, as Poloron argues, in failing to consider the "two principal prior art references" Poloron relied upon, and accordingly in failing to determine the scope and content of the prior art as required by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). The references are a prior art chair of Bela's (Bela 2070) and a 1952 catalog of Clarin Manufacturing Company, a competitor in the folding chair

market, illustrating a Clarin chair. Both of these chairs were exhibits introduced into the record at the trial.

The record discloses however, that neither the Bela 2070 chair nor the Clarin 1952 catalog chair was relied upon by Poloron as its "principal prior art references." They were not among the prior art references included in its § 282 notice sent to Bela before trial. And at trial Poloron relied upon exhibits "4–A to –G" and "DX–10," none of which included either of the two references.

Poloron's own expert admitted that Bela's 2070 chair is similar to the Adler and Supita chairs[3], which were specifically discussed in the district court's findings. And Clarin's catalog shows the same X-frame folding chair (in somewhat less detail) as that disclosed in the Clarin Patent No. 2,664,943,[4] which also was specifically discussed in the findings. The court did not err in failing to discuss the Bela 2070 and Clarin catalog chairs, or in failing to apply the standards of *John Deere Co.*

■ We find no merit in Poloron's related contention that had the trial court considered the Bela 2070 and Clarin catalog chairs it would have found that these two chairs, taken together, had all the "advantages" the court found in the chair in suit and that three structural differences between the chair in suit and the two prior art chairs can be found in the other prior art references before the district court. Suffice to say

with respect to the first contention, the chair in suit is novel because it combines all the "advantages" of the prior art chairs in a single product which is "new and unobvious."[5] There is no claim that either of the two prior art chairs alone does so.

As to the second contention: the double pivot back support is not an element in the claims in suit and the releasable lock feature was held not to be infringed by the Poloron chair. The universal joint front support of the tablet arm is the main structural difference between this chair and the prior art, and this joint enables the tablet arm to move both cooperatively with, and independent of, the chair seat. Neither the Bela 2070 nor any prior art reference has the universal joint front support, and no prior art chair tablet arm is capable of both cooperative and independent movement.

The district court made extensive findings with respect to Moore patent No. 1,864,750. We are not persuaded by Poloron's specious argument that since there are clear differences between the Moore patent and the claim in suit the extensive findings of the trial court indicate that claims 1 and 3 of the patent in suit violate 35 U.S.C. § 112 by failing to "particularly point out and distinctly claim the subject matter" of the invention. The district court probably considered the extensive findings necessary because Poloron's chief reliance for invalidity was on the Moore patent. This

3. The trial court found the Supita chair, unlike the patented and accused chairs, does not have a tablet arm which moves about a plurality of different axes, and which moves independently of the chair seat. The court found that the Adler chair was very similar to the Supita patent.

The tablet arm on the non-patented Bela 2070 chair, like the Supita and Adler chairs, does not move independently of the chair seat and does not move about a plurality of different axes.

4. The trial court found that the Clarin No. 2,664,943 chair, unlike the chairs in suit, does not have a link pivotally connected to the seat or a tablet arm and seat which

move cooperatively. The Clarin catalog pictures an X-frame folding arm chair with a tablet arm which, like the Clarin 2,664,943, moves independently of the seat but does not have a link pivotally connected to the seat and the tablet arm and seat are not capable of cooperative movement.

5. The trial court found: "Even though each of these elements, if taken separately, is not new or patentable, it is the combination of these elements which is new and unobvious, and which produces a new result in that a unique and highly efficient folding chair is produced." Finding 15. Poloron does not directly contest this finding.

is shown by the fact that over 100 pages of transcript were devoted to a discussion of this prior art.

■ Bela's expert Cowie testified at the trial on the accepted technical terminology in the claims in suit. Poloron argues that the district court erred in relying on Cowie's testimony and that accordingly its patent lawyer-expert's testimony is uncontroverted. We have read Cowie's testimony and see no reason to disagree with the trial court's evaluation of Cowie's description of the structure and operation of a relatively simple folding chair. The court found Cowie qualified to testify in "ordinary mechanical or technical terms." Furthermore we do not find in Cowie's testimony "admissions" making out a prima facie case of anticipation by Moore of each feature of claim 1. We reject therefore the argument that claim 1 must be overbroad in being identified with the Moore patent which is basically and distinctly different from the patent in suit.

■ We see no substance to Poloron's argument that the Bela specifications do not comply with the requirement of 35 U.S.C. § 112 that they "set forth the best mode contemplated by the inventor of carrying out his invention." We do not read the specifications, the way Poloron does, as requiring the unfolding of the chair in suit by using the seat as a "driver." The specifications describe the movement of the assembly so as to arrive at the cooperative effect. No clear mention is made in the specifications that the seat is to be used as the driver member and the tablet arm as the driven member in unfolding the chair from the *completely* folded position. Moreover, the testimony at trial shows that the claims and drawings in the patent in suit disclose—to one skilled in the art—that the chair could not possibly be opened from the folded position by pushing forward on the chair seat. There was also testimony that the normal and recognized method of opening chairs with cooperative movement is to pull up on the tablet arm. Based on this testimony, the trial court found that it could be clear to anyone skilled in the art that the chair cannot unfold by using the seat as a driver.

The challenges of Poloron are ineffective against the district court's decision of validity.

## II. INFRINGEMENT

■ Poloron contends that the court erred in deciding that the accused chair infringed the patent in suit because three features of the Bela chair in suit are not found in the accused chair: (1) movement of the tablet arm and movement of the chair "to different positions simultaneously as a cooperative assembly;" (2) a "universal joint" as a support for the front end of the tablet arm, providing "universal pivotal movement" of the tablet arm with respect to the supporting link; (3) joint structure which "supports" the tablet arm and "maintains" the arm in position when it is in use. As to (1), Poloron argues that the claimed "movement" requires use of the seat as the driver and that this operation is missing in the accused chair. However, we have shown above that the claims do not require use of the seat as driver. The court did not err in finding that the cooperative movement referred to in the claims was infringed by the accused chair.[6] With respect to (2), the patent in suit defines "universal pivotal movement" as movement of the parts of the joint structure "about different axes at the same time *or* at different times." (Emphasis added.) The district court had ample basis for finding that both chairs provide "universal pivotal movement" of the tablet arm: both tablet arms pivot outward, inward, downward and upward about axes with respect to the link connecting the seat

---

6. Poloron's expert, Mr. Pigott, agreed with Bela counsel's statement of the three criteria of "cooperative" movement of a tablet arm and seat of a folding chair, and admitted that the criteria were met by the normal closing of Poloron's accused chair.

and tablet arm. As to the "universal joint," both Bela's expert Cowie and Poloron's expert Pigott testified as to the meaning of "true universal joint" and discussed this technical term with reference to the joint supports in the patented chair and the accused chair. The district court was justified in finding that the joint structure of the accused chair—although not a true universal joint—is the mechanical equivalent of a universal joint. Finally, as to (3), the words "support" and "maintain" in the claims in suit do not refer to the locking feature which prevents the tablet arm from turning when pressure is applied to the outer edge but rather to the tablet arm being held in its writing position when downward pressure is placed anywhere on its surface. One embodiment of the claims (Figures 17–21) does not have a locking feature, and one claim requires that the pivotal connection at the front and rear of the tablet arm cooperate to support and maintain the arm. The rear pivotal support is not involved in the locking feature.

### III. PATENT MISUSE

██ After the patent in suit issued, Bela entered non-exclusive licensing and cross-licensing arrangements with Clarin Manufacturing Company (Clarin) and Hampden Specialty Products Corporation (Hampden), competitors of Poloron. The license granted to Clarin was royalty-free, and superseded a previous cross-license given to Clarin in settlement of a lawsuit brought by Clarin against Bela. The license granted to Hampden required payment of a royalty of 17½¢ per chair. Eventually Hampden became non-exclusive licensee of both Clarin and Bela.

After this litigation began, Poloron learned of the Bela non-exclusive license to Hampden and offered to take a similar license on the same terms as Hampden's in order to dispose of the litigation. Bela at first refused, but later offered a license with a royalty of $1.60 per chair, and reduced the royalty offer to 75¢ per chair shortly before trial.

Poloron poses the issue on this aspect of the appeal as one of first impression for this court: whether injunctive relief against future infringement should be "withheld from a patent owner who seeks to discriminate in royalty rates charged to undifferentiable competitors under the patent."

The Hampden 17½¢ per chair license was dated March 9, 1962, and the Clarin royalty-free license was dated September 4, 1964. Poloron made its request for a license on the same terms as the Hampden license in February, 1967. The court found that Bela regretted the unreasonably low rate to Hampden, that the request in 1967 of the 1962 rate to Hampden would force on Bela a rate injurious to it, and that the 75¢ per chair rate was less than 7% of the price at which Poloron sells its chairs. The court concluded that Bela had no duty to grant Poloron's request for a license at the same rate given Hampden. We see no error in the conclusion. Where, as here, there were rational bases upon which Bela could refuse to grant Poloron a license on the same terms as it granted Hampden's license, there is no invidious discrimination so as to offend the anti-trust law. *See* Extractol Process v. Hiram Walker & Sons, 153 F.2d 264 (7th Cir. 1946); United States v. Huck Manufacturing Co., 227 F.Supp. 791, 804 (E.D.Mich.1964), aff'd 382 U.S. 197, 86 S.Ct. 385, 15 L.Ed.2d 268 (1965).

Poloron's reliance upon Allied Research Products, Inc. v. Heatbath Corp., 300 F.Supp. 656 (N.D.Ill.1969); and Laitram Corp. v. King Crab, Inc., 244 F.Supp. 9 (D.C.Alaska 1965), is misplaced. In *Allied*, the court found "unfair discrimination" in plaintiffs' refusal of a license to defendants on the same terms as the latter's competitors' license from plaintiffs "solely because of a personal feud between plaintiffs and defendants." No authority was cited for the court's conclusion. We do not decide what weight should be given this decision, but merely point out that there, unlike the case before us, no valid rea-

sons were given for the refusal to license defendant. In *Laitram*, the district court found an abuse of monopoly power in that the plaintiff had substantially and unjustifiably injured competition in the shrimp canning industry by charging different royalty rates for the use of its patented machinery on the west coast from that in the Gulf of Mexico area. The district court in the case at bar found that Bela had sought a higher royalty rate from Poloron because it had determined that the earlier license rate was "unreasonably low;" there is no showing that Bela intended to deter competition with Poloron's competitors.

Hazeltine Research, Inc. v. Zenith Radio Corp., 388 F.2d 25 (7th Cir. 1967), is inapposite. There the district court held that defendant had violated the anti-trust laws by coercing Zenith to accept an unlawful package license or face litigation. We affirmed and modified the injunctive relief for Zenith so as to give it "the benefit only of the same royalty rates" as other Hazeltine licensees. Here the district court found no patent misuse and Poloron's contention is merely that the discriminatory rates charged different licensees is *per se* a patent misuse.

The cross-licensing agreements between Bela and Hampden and Clarin contain conditions that Bela and the others would manufacture "tablet arm chairs embodying the invention * * * but not of substantially identical design." Since Bela's patent does not cover design, Poloron argues the patent in suit was expanded so as to constitute an unlawful restraint on competition as to unpatented aspects of the chairs involved. The district court found that Bela had the right to impose these conditions on itself and its licensees as a reasonable step to maintain individuality between manufacturers with respect to design of their chairs.

We find no error in the court's conclusion. A licensor may restrict the licensee's manufacture of the patented item to a specific use or design. *See*

Vulcan Mfg. Co. v. Maytag Co., 73 F.2d 136 (8th Cir. 1934).

McCullough v. Kammerer Corp., 166 F.2d 759 (9 Cir. 1948), and United States v. Associated Patents, Inc., 134 F.Supp. 74 (E.D.Mich.1955) (API), relied on by Poloron, are of no aid to it. In *McCullough,* the licensor restricted the licensee from making competitive articles which fell outside the claims of the licensed patents. And in API one of the violations was that the members arrived at the general unwritten agreement not to compete in the manufacture of tools irrespective of whether or not the API patents were utilized. Clearly these were against the public interest in withdrawing both parties from the field of inventing or using the competitive devices. Unlike these cases, relied on by Poloron, the restrictions in the Bela agreements are limited to the manufacture of chairs covered by the claims of the patent in suit. The general rule favors the broadest freedom in the use or sale of rights under the patent law of the United States. Bement & Sons v. National Harrow Co., 186 U.S. 70, 91, 22 S.Ct. 747, 46 L.Ed. 1058 (1902). We see nothing in the conditions challenged which is an unreasonable exercise of Bela's patent rights or against the public interest.

The judgment is affirmed.