In The


 

Court of Appeals



Ninth District of Texas at Beaumont


 

____________________



NO. 09-02-173 CV


____________________



WARNER-LAMBERT COMPANY, PFIZER, INC., BAYER CORPORATION,


DEL PHARMACEUTICAL, INC., DEL LABORATORIES, INC., AND


CARE TECHNOLOGIES, INC., Appellants



V.



KATHERINE MILLS AND VERONICA EVANS, INDIVIDUALLY


AND ON BEHALF OF OTHERS SIMILARLY SITUATED, Appellees






On Appeal from the 163rd Judicial District Court


Orange County, Texas


Trial Cause No. B-10023-C






MEMORANDUM OPINION


 Katherine Mills and Veronica Evans sued appellants Warner-Lambert Company,
Bayer Corporation, Pfizer, Inc., Del Pharmaceutical, Inc., Del Laboratories, and Care
Technologies, Inc., alleging breach of implied warranty and violations of the Texas
Deceptive Trade Practices Act (DTPA). See Tex. Bus. & Com. Code Ann. §§ 2.314,
17.50(a)(2) (Vernon 1994, 2002). The trial court entered an order granting appellees' motion
for class certification under then Rule 42(b)(4) of the Texas Rules of Civil Procedure. (1) 
Appellants filed an interlocutory appeal pursuant to Tex. Civ. Prac & Rem. Code Ann. §
51.014(a)(3) (Vernon Supp. 2005). In a prior opinion, we held the trial court lacked subject
matter jurisdiction because appellees' claims were preempted by federal law. See Warner-Lambert Co. v. Mills, 117 S.W.3d 488 (Tex. App.--Beaumont 2003), rev'd, 157 S.W.3d
424 (Tex. 2005). The Supreme Court reversed our judgment and remanded the case to this
Court for consideration of the other issues raised on appeal. See Mills v. Warner-Lambert
Co., 157 S.W.3d 424 (Tex. 2005). 

 In their first issue, appellants assert the class certification order should be reversed
because the trial court failed to perform the rigorous analysis required for class certification. 
See Southwestern Ref. Co., Inc. v. Bernal, 22 S.W.3d 425, 435 (Tex. 2000). A certification
order must explain how the claims will be tried "to allow reviewing courts to assure that all
requirements for certification under Rule 42 have been satisfied." State Farm Mut. Auto. Ins.
Co. v. Lopez, 156 S.W.3d 550, 556 (Tex. 2004). While the order here purports to address a
common question of fact, it recognizes the possibility of individual issues, and it does not
adequately explain how the claims will be tried in a way that will permit the assertion of
defenses and provide due process. The order does not adequately analyze how the claims
will be properly determined under the proposed trial plan. We reverse the certification order
and remand for proceedings consistent with this opinion. 

 The class representatives are consumers who purchased appellants' products for
"personal consumption or for their family members to cure lice infestation." They claim the
products failed to cure the infestations because the "products contain a lice-resistant
pesticide." Appellees also contend that appellants falsely claim their products cure lice
infestation and kill lice eggs. In their brief in this Court, appellees describe their claims as
follows:

 So, let us be clear about the nature of the claims. The plaintiffs are contending
that the defendants' products amount to snake oil. The products are inherently
useless and worthless. They do not kill lice. They do not cure lice
infestations. The defendants' position that the products "work" is based on
pure illusion.


Appellees explain as follows:


 [T]here is scientific proof and proof from the Defendants' own files that the
products do not cure head lice infestations. The mere fact that some
consumers may perceive the products to have "worked" does not mean that the
products actually did work or that they "performed satisfactorily. . . ."


According to appellees, "the evidence shows that what gets rid of a lice infestation is careful
and prolonged combing." Appellees seek "to recover purely economic loss based on breach
of implied warranty" rather than any damages for personal injuries. They state, "This is not
a suit in which the Plaintiffs are contending that the products were ineffective merely in
particular cases or for particular people." Rather, appellees contend the products are not
chemically formulated to work for anyone. Appellees rely on this alleged uniform defect as
the foundation for the class certification. 

 The trial court certified a class defined as follows:

 All Texas consumers of Warner-Lambert Company's "NIX Lice
Treatment," Bayer Corporation's and Pfizer, Inc.'s "RID Lice Killing
Shampoo," Del Pharmaceutical, Inc.'s and Del Laboratories, Inc.'s "Pronto
Lice Treatment," and Care Technologies, Inc.'s "Clear Lice Egg Remover" or
"Clear Lice Killing Shampoo," who, for purposes of breach of warranty action,
purchased said products in Texas from January 17, 1997 to present (four years
from the date of filing this class action) and those consumers who purchased,
for purposes of the DTPA bre[a]ch of warranty action, from January 17, 1999
to present (two years from the date of filing this action), and who have not
received a full refund for the purchase of such products. (2)


Appellants do not challenge the class definition. They challenge the assertion that their
products never work, and they contend the trial court has not adequately analyzed the
propriety of class certification. 

 A trial court must perform a rigorous analysis to determine whether all prerequisites
to certification have been met. Bernal, 22 S.W.3d at 435. It is improper for a court to certify
a class without knowing, and indicating in the certification order, how the claims can and will
likely be tried. Id. To adequately analyze the propriety of class certification, "[g]oing
beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant
facts, and applicable substantive law in order to make a meaningful determination of the
certification issues." Id. (quoting Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th
Cir. 1996)). A trial plan is a part of the rigorous analysis a trial court performs before ruling
on class certification. See North Am. Mortgage Co. v. O'Hara, 153 S.W.3d 43, 44 (Tex.
2004); Lopez, 156 S.W.3d at 556. 

 The class action procedure is not meant to alter the burden of proof, the right to jury
trial, or any substantive prerequisites to recovery. A class action is a procedural device
designed to promote judicial economy. See Bernal, 22 S.W.3d at 437; see also Tex. R. Civ.
P. 815. Class actions cannot be used in a way that deprives a party of a fair and impartial
trial. See Bernal, 22 S.W.3d at 437. "[B]asic to the right to a fair trial -- indeed, basic to the
very essence of the adversarial process -- is that each party have the opportunity to
adequately and vigorously present any material claims and defenses." Id. If individual
issues remain to be litigated after common issues are resolved, the remaining litigation must
be manageable and triable to the jury in a way that does not modify substantive law or
preclude a party from presenting viable claims or defenses. See Bernal, 22 S.W.3d at 435-37. (Procedural devices may not be used to enlarge or diminish any substantive rights or
obligations of the parties.) 

 In certifying the class under then Rule 42(b)(4), the trial court determined that
questions of law or fact common to the members of the class predominate over any questions
affecting only individual members. The requirement of predominance is one of the most
stringent prerequisites to certification. Bernal, 22 S.W.3d at 433. A court must identify the
substantive issues that will control the outcome of the litigation, assess which issues will
predominate, and determine if the predominating issues are those which are common to the
class. Id. at 434. The test for predominance is not whether common issues outnumber
individual issues, but "whether common or individual issues will be the object of most of the
efforts of the litigants and the court." Id. (quoting Central Power & Light Co. v. City of San
Juan, 962 S.W.2d 602, 610 (Tex. App.--Corpus Christi 1998, writ dism'd w.o.j.)). 

 A class certification determination generally involves some consideration of the
controlling factual and legal issues involved in the claims and defenses because the court
must understand the issues to make a meaningful certification determination. See Intratex
Gas Co. v. Beeson, 22 S.W.3d 398, 404 (Tex. 2000). ("Because class determinations
generally involve considerations 'enmeshed in the factual and legal issues comprising the
plaintiff's cause of action,' the trial court must be able to make a reasonable determination
of the certification issues."). However, although analyzing whether the requirements for
class certification have been met may involve reviewing the kind of proof necessary to
establish the defendant's liability, deciding a defendant cannot produce credible evidence to
defeat the claim is a "merits-based" determination and is premature at the certification stage. 
See Snyder Commun., L.P. v. Magana, 142 S.W.3d 295, 301 (Tex. 2004). "Deciding the
merits of the suit in order to determine the scope of the class or its maintainability as a class
action is not appropriate." (3) Beeson, 22 S.W.3d at 404. 

 The certification order here states: 

 Repeatedly, the Defendants have claimed that because the products "worked"
for some class members, this defeats commonality, typicality, adequacy and
predominance, and hence, prevents class certification. Such issues improperly
invite this court to consider a merits-based inquiry at the certification level,
which the court refuses to do. In any case, the court has not been presented
with any credible evidence that Defendants' products worked for any class
members, so this basis for defeating predominance fails. 


The trial court essentially reviewed the evidence presented to it, and after finding no
"credible" evidence the products worked, concluded individual issues would not predominate
over common issues. The merits of the claim should not be decided to determine whether
the class meets the certification requirements. See Magana, 142 S.W.3d at 301; Beeson, 22
S.W.3d at 404.

 The certification order further states: 

 The Court finds that the issues that will 'occupy most of the efforts of
the litigants and the court' are these: (1) Did the Defendants misrepresent their
products through their advertising, promotion and marketing practices? (2)
Were the Defendants' products fit for the ordinary purposes for which they
were to be used? (3) Could the Defendants' products pass without objection
in the trade under the contract description? (4) Did the Defendants' products
conform to the promises or affirmations of fact made in their advertising and
marketing? (5) What was the value of the Defendants' goods as accepted by
Plaintiffs at the time and place of acceptance? 

 . . . .

 Moreover, subsumed within all of the above issues is the even more
fundamental question of whether or not the Defendants' products were
formulated to be effective for the cure and treatment of head lice infestations. 
This is the more precise question on which most of the efforts at trial will
focus.


The certification order says the fundamental question "is exactly the same for all Plaintiffs
in the class. When answered as to one, it will be answered as to all." Yet the certification
order states, "to the extent individual issues arise or exist, such individual issues should be
resolved as set forth herein, or by other fair and manageable methods to be determined by
this court." It is unclear from the order whether the trial court plans to consider individual
claims of ineffectiveness if the jury rejects the class representatives' assertion that the
products work for no one. The representatives' claim appears to be that the chemical
formulation once worked but no longer works because lice have developed resistance over
time. It is unclear from the order whether the trial court anticipates that a failure to prove the
uniform defect claim -- the products never worked during the time the class used the products
-- will result in a take-nothing judgment barring all class members' claims. See Compaq
Computer Corp. v. Albanese, 153 S.W.3d 254, 259 n.2 (Texas App.--Beaumont 2004, no
pet.) ("A final judgment in an action generally determines the interests of the parties and is
binding on them."). 

 The proposed trial plan reflects the trial court anticipates asking the jury whether the
products purchased by the class representatives were "unfit for the ordinary purposes for
which such products are used because of a defect. . . ." The proposed question defines the
products' alleged "defect" as "a condition of the goods that renders them unfit for the
ordinary purposes for which they are used because of a lack of something necessary for
adequacy." This may submit a liability issue when liability is based on a claim that the
products did not work in the individual plaintiff's case, but appellees say this is not a suit in
which they claim the products were merely ineffective in some cases. A jury answer to the
proposed question in favor of the class representatives, essentially determining whether the
product worked for them, would not necessarily establish the products never worked for any
member of the class. Plaintiffs' theory is that resistance has developed to the extent the
products have been rendered ineffective in all cases, but the definition of "defect" in the
proposed question is broader than the defect alleged as the basis for the class certification,
and may include a defect which appellees say they are not asserting: "This is not a suit in
which the Plaintiffs are contending that the products were ineffective merely in particular
cases or for particular people." The proposed jury question does not define "defect"
specifically to ask the fundamental question the class representatives raise as the foundation
of their claim: whether the products had a defect that necessarily means they did not work
for anyone under any circumstance. 

 The certification order states: "Plaintiffs are willing to waive any recovery by those
class members who feel that they did in fact receive a benefit." Appellees claim that those
purchasers who believe they received a benefit are simply mistaken. However, rather than
being mistakenly satisfied as the plaintiffs assert, defendants say some users may be satisfied
because the products continue to kill lice; that appears to be the fundamental issue to be tried,
and the issue cannot be decided in favor of the class at the certification stage. Because
appellees claim the products had a chemical formulation defect and did not work for any
member of the class, the certification order must address how that fundamental question will
be submitted to the jury in a way that binds all members of the class who do not opt out. See
generally Beeson, 22 S.W.3d at 405 (indicating Rule 42 was not meant to be an exception
to res judicata or to provide a risk-free method of litigation).

 Additionally, the certification order apparently anticipates the jury ultimately may be
required to make individual damage determinations. Although appellees state their claim is
limited to the purchase price of the products and attorney's fees, the certification order
simply states the product purchase price is the "primary" measure of damages sought by the
class members. The order says: 

 Because the primary measure of damages the Class Members seek is merely
the product purchase price, the damages issues can be resolved without
individual proof. The Defendants have information in their own business
records as to the sale price of their products in the various regions of Texas. 
The only issues that require individual attention involve the questions of which
products were purchased, and how many were purchased, and these can be
resolved with the proof of claim form. Even if there were a need to determine
the amount of damages for each class member, this certainly would not prevent
this class from being certified. Class certification will not be prevented merely
because damages must be determined separately for each class member. 
Damages may be efficiently determined through proof-of-claim forms,
individual damage hearings, or other manageable means. (emphasis added). 


The proposed damages question in the trial plan would ask the jury, "What sum of money,
if any, if paid now in cash, would fairly and reasonably compensate [class representative] for
her injuries, if any, that resulted from the occurrence in question?" The term "injuries" is
not defined and may not necessarily mean merely the product purchase price. Under this
proposed submission of damages, individual "injury" claims may have to be determined
class member by class member. See Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 694
(Tex. 2003). If that is the plan, it is unclear from the order how common issues predominate
over those individual issues. See id. at 694-95. 

 The certification order suggests utilizing proof of claim forms which require appellees
"to swear that they purchased the product and used it properly, and that it was ineffective
nonetheless." The trial court's certification order also states, "[i]f the products . . . are found
to be chemically and scientifically ineffective for . . . Texas head lice infestations, then that
will be a producing cause of plaintiffs' economic loss regardless of what occurred after the
consumer purchased the product." If the trial court nevertheless determines it will be
necessary for an individual to swear on a claim form that the product was ineffective when
used properly, a procedure for contesting that necessary proof requirement must be
established to afford defendants due process. See Bernal, 22 S.W.3d at 437. It is unclear
from the order how litigating the claims will be manageable as a class action if individual
hearings before a single jury are required to decide whether a product was ineffective or used
properly in individual cases. 

 We note the certification order states: "[t]he court believes that the proof of claim
form can be modified at a later date to reflect what is proven at trial." Bernal requires a trial
court to analyze the manageability of the procedure to be used before a class is certified, not
after the cause proceeds to trial. See Bernal, 22 S.W.3d at 435. If the trial ultimately
establishes the products worked for some class members but not others, and the court
nevertheless plans to then permit individual claims of ineffectiveness, it seems doubtful 
common issues could be said to predominate under that plan, even if for some unexplained
reason those individual claims were not precluded. 

 The certification order says appellants' defenses include the following: comparative
negligence; appellees' misdiagnosis of lice, misuse or improper use of product, and failure
to follow the products' labeling; intervening or superseding conduct of third parties; failure
to mitigate; assumption of risk; informed consent; statutes of limitation; laches, waiver, and
estoppel; failure to provide notice; and various other defenses. The trial plan says "Plaintiffs
expect that all of Defendants' defenses will be resolved before trial when the court rules on
the Plaintiffs' Motion for Summary Judgment on Affirmative and Special Defenses," but the
trial court may not simply rely on a plaintiff's expectation there will be no defenses to try. 
The certification order states "[a]ll defenses can all be addressed universally for the entire
class during one trial and can be presented to one jury through jury questions[,]" yet the trial
plan's proposed charge includes no jury question concerning any defense. It is unclear
whether the trial court anticipates proof the products cured some lice infestations would
defeat the claims of those for whom the products did not work; the order does not adequately
explain whether the defenses will require consideration of individual circumstances in the
event the products failed to work for only some class members. The certification order does
not adequately set forth how appellants will have an opportunity to assert defenses in any
event. See generally Lopez, 156 S.W.3d at 556 (A trial plan is required in every certification
order to allow reviewing courts to assure compliance with Rule 42.); Bernal, 22 S.W.3d at
437 (The parties must be given the opportunity to adequately and vigorously present any
material claims and defenses.). 

 The certification order and the trial plan must reflect a rigorous analysis of all
certification prerequisites to allow a reviewing court to meaningfully evaluate whether the
certification of the class complies with Rule 42. See Lopez, 156 S.W.3d at 556. The
certification order here does not reflect the rigorous analysis required for class certification. 
See Bernal, 22 S.W.3d at 435. The order is reversed and the cause remanded for further
proceedings. We need not address the other issues raised because this issue is dispositive of
the appeal, and because the remaining arguments and issues likely will be impacted by the
trial court's additional proceedings. 

 REVERSED AND REMANDED.


 

 DAVID GAULTNEY 

 Justice



Submitted on June 30, 2005

Opinion Delivered August 31, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ. 
1. Former Rule 42(b)(4) of the Texas Rules of Civil Procedure is now Rule 42(b)(3)
pursuant to amendment, effective January 1, 2004. See Tex. R. Civ. P. 42(b)(3) (Vernon
Supp. 2005).
2. We note plaintiffs' second amended proposed trial plan, which the trial court
adopted by reference in its certification order, defines the class as follows:


 all Texas consumers of Warner-Lambert Company's "NIX Lice Treatment,"
Bayer Corporation's and Pfizer, Inc.'s "RID Lice Killing Shampoo," Del
Pharmaceutical, Inc.'s and Del Laboratories, Inc.'s "Pronto Lice
Treatment," and Care Technologies, Inc.'s "Clear Lice Egg Remover" or
"Clear Lice Killing Shampoo," who purchased said products in Texas
between January 17, 1997 and the present and who have not received a full
refund from the Defendants for the purchase of such products.
3. However, if "no class member can state a viable claim, dispositive issues should
be resolved by the trial court before certification is considered." See Lopez, 156 S.W.3d
at 557.