**CAPITAL ONE BANK, Capital One Services, Inc., Capital One F.S.B., and Capital One Financial Corporation, Appellants,**

v.

**Selaine ROLLINS, Individually, and on Behalf of all Others Similarly Situated, Appellee.**

**No. 01–02–00279–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 30, 2003.

Christopher W. Byrd, Lewis Cooper Sutherland, Vinson & Elkins Tower, Michael C. Holmes, Jason Michael Powers and Walter B. Stuart, Houston, for Appellants.

Andrew Mytelka, Steven Carl Windsor, Greer, Herz & Adams, Galveston, John C. Grazier, Houston, for Appellee.

Panel consists of Justices HEDGES, JENNINGS and EVANS*.

## OPINION

FRANK G. EVANS, Justice (Assigned).

In this interlocutory appeal, Capital One,[1] a national issuer of credit cards, challenges the trial court's order granting class certification to two groups of Capital One credit card holders. We address whether the trial court abused its discretion in certifying each of the two subclasses. After analyzing each subclass under the requirements enunciated by the Texas Supreme Court in *Southwestern Refining Company v. Bernal,* 22 S.W.3d 425 (Tex. 2000) and *Intratex Gas Company v. Beeson,* 22 S.W.3d 398 (Tex.2000), we reverse the trial court's class-certification order and remand to the trial court with instructions to decertify both classes but without prejudice to further consideration of class certification.

## CASE OVERVIEW

Class representative, Selaine Rollins, ("Rollins") obtained both a Visa card and MasterCard account with Capital One.[2] Rollins, individually, and on behalf of similarly situated credit card holders, filed this nationwide class action suit against Capital One complaining of the manner in which Capital One charged late and "overlimit fees." Rollins alleges the manner in which these fees were charged breached her contract with Capital One, known as a "customer agreement." The customer agreement provision governing the imposition of such fees stated:

> OTHER CHARGES. The following charges may be billed to the purchase segment of your account, unless otherwise specified: **late charge if we do not receive your payment in time for it to be**

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Rollins has sued Capital One Bank, Capital One Services, Inc., Capital One F.S.B., and Capital One Financial Corporation. The relationship between these entities and the role each played in the conduct of which Rollins complains is not readily apparent from the record. In her live pleading and on appeal, Rollins does not distinguish between these entities; rather, she collectively refers to them as "Capital One," and, for ease of reference, so shall we.

2. Although not entirely clear from the record, it appears Rollins obtained these accounts with Capital One Bank.

credited by the following statement closing date; **overlimit charge if your account exceeds any temporary or permanent assigned credit limit, even if we approve the overlimit amount;** returned check charge if a check is returned to us for any reason, or if we cannot honor your account access checks for any reason . . . .

(Emphasis added.)

With regard to late fees, Rollins challenges Capital One's former policy of failing to credit its customers' payments on the date of receipt when those payments were received after the "cutoff" time of 9:00 a.m.[3] Rollins contends this practice allowed Capital One to charge its customers late fees when payments were received on the payment's due date, but after 9:00 a.m.

Rollins asserts the practice is particularly egregious when viewed in the context of how Capital One received its customer payments. Rather than allowing the postal service to deliver customer payments to its processing center, Capital One sent couriers to the post office to pick up its mail. Rollins argues such practice allowed Capital One to control the number and timing of the payments received on any given day.

Rollins also complains of Capital One's policy related to "overlimit fees." Capital One imposed an overlimit fee when the customer's account exceeded a defined credit limit. Rollins does not take issue with the initial charge of an overlimit fee; rather, she complains of Capital One's poli-

cy of charging an overlimit fee for each consecutive billing period that the customer's balance remained over the credit limit, but at no time fell below the limit. Rollins contends this practice violates the plain language of the customer agreement governing overlimit fees, *i.e.,* that Capital One may bill an "overlimit charge if your account exceeds any temporary or permanent assigned credit limit, even if we approve the overlimit amount." According to Rollins, under the terms of the customer agreement, Capital One should only be allowed to charge the overlimit fee one time, that is, when the customer initially exceeds the credit limit. If during the next and subsequent billing periods the account balance does not fall below the set credit limit, Rollins contends the customer agreement does not allow Capital One to continue to charge overlimit fees. Capital One counters that the customer agreement "unambiguously and explicitly" provides that an overlimit fee can be charged for each billing period in which the account balance remains over the credit limit, even if the account balance never falls below the credit limit during the second and subsequent billing periods.

Rollins moved for class certification relating to her overlimit and late fee claims. Rather than conducting an evidentiary hearing on the certification issue, the trial court instructed the parties that evidence would be considered by written submission. In accordance with the trial court's instructions, the parties filed briefs and

---

**3.** Relating to the late fees at issue in this case, Capital One enclosed the following instructions with its customers' monthly account statements:

**Important Notice:** For your payment to be credited on the same day we receive it, the bottom portion of this statement and your check must be received by us on a business day by 9:00 a.m. in the enclosed remittance

envelope at our processing center. Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in another form may not be credited the same day we receive them. Our business days are Monday through Friday, excluding holidays.
Beginning in September 1999, the cutoff time was changed to 3:00 p.m.

supporting evidentiary materials, which form the basis for the trial court's ruling. The trial court then conducted a class certification hearing at which counsel simply presented oral argument. Following the submission of additional briefing, the trial court signed a "Class Certification Order," certifying two classes of Capital One credit card holders pursuant to Texas Rule of Civil Procedure 42.

The trial court defined membership in the two classes as follows:

*Class No. 1 ("Overlimit Fee Class"):* All past and present Capital One Bank credit card holders (a) with an account active at any time after January 1, 1995, and not in "default" according to Capital One's records on the date the class is certified; (b) with a customer agreement which provides for the assessment of an overlimit fee but does not expressly specify that this overlimit fee will be assessed for each billing period that the account remains over the limit; and (c) that were assessed overlimit charges for two or more consecutive billing periods because the account balance was over the credit limit but where, at no time during the second or subsequent of these billing periods, was the account balance within its credit limit.

*Class No. 2 ("Late Fee Class"):* All past and present Capital One Bank credit card holders (a) with an account active at any time after January 1, 1995, and not in "default" according to Capital One's records on the date the class is certified; (b) that tendered conforming payments during the time period Capital One did not credited [sic] payments received after 9:00 a.m. on the day they were received but instead posted the credit on the following day; and (c) that we assessed a late fee because the payment was credited to the account within five business days after the payment due

date. This class is certified pursuant to Rule 42(b)(4).

The terms "default," "conforming payments," "late fee" and "overlimit fee" shall have the meaning as defined in the customer agreements and as used by Capital One in its course of business. In particular, an account is defined to be in "default" if the account has been declared by Capital One to be in a "default" status.

In seven issues, Capital One contends the trial court erred in certifying the two subclasses because the prerequisites for class certification under Rule 42 were not satisfied for either class. Included in these issues are Capital One's challenges that (1) the Overlimit Fee Class definition creates an impermissible "failsafe" class and (2) individual issues predominate over common ones with regard to the Overlimit Fee Class.

### STANDARD OF REVIEW

■ We review a trial court's ruling on class certification for abuse of discretion. *Henry Schein, Inc. v. Stromboe,* 46 Tex. Sup.Ct. J. 103, 112 (October 31, 2002); *Bernal,* 22 S.W.3d at 433; *Union Pac. Res. Group, Inc. v. Neinast,* 67 S.W.3d 275, 279–80 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Under this standard, we defer to a trial court's rulings when discretionary matters depend on the resolution of conflicting facts. *Neinast,* 67 S.W.3d at 280; *see also Schein,* 46 Tex. Sup.Ct. J. at 112 (stating that only "some of [the trial court's] determinations—like those based on its assessment of the credibility of witnesses" must be "given the benefit of the doubt."). However, we cannot indulge every presumption in favor of the trial court's ruling. *Schein,* 46 Tex. Sup.Ct. J. at 112. A trial court abuses its discretion when it misinterprets or misapplies the governing law. *Neinast,* 67 S.W.3d at 280.

## STATUTORY REQUIREMENTS FOR CERTIFICATION

Rule of civil procedure 42 governs class certification. TEX.R. CIV. P. 42. A member of a class may sue or be sued as a representative party of the class only if all of the following requirements of Texas Rule of Civil Procedure 42(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. TEX.R. CIV. P. 42(a). In addition, a party seeking class certification must prove at least one of the following requirements enumerated in Rule 42(b): (1) adjudication of separate actions would create a risk of inconsistent results or impairment of the interests of other members not parties to the adjudication; (2) the defendant has acted or refused to act on grounds applicable to the entire class; (3) the object of the action is the adjudication of claims affecting specific property involved in the action; or (4) common questions of law or fact predominate over any questions affecting only individual members, and a class action is the superior method of fairly and efficiently adjudicating the controversy. TEX.R. CIV. P. 42(b).

 The class action serves as a mechanism to eliminate or reduce the threat of repetitive litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for individual claims that are too small to make independent actions economically viable. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000). However, even though class certification is an efficient litigation device, a trial court cannot presume compliance with Rule 42, and it must determine whether compliance has been demonstrated. *Schein,* 46 Tex. Sup.Ct. J. at 114.

## DISCUSSION

### THE OVERLIMIT FEE CLASS DEFINITION

In issue six, Capital One contends that the Overlimit Fee Class definition is fatally defective because it creates an impermissible failsafe class, that is, a class that cannot be defined until the case is resolved on its merits.

 The supreme court has held that, as a threshold matter, "Rule 42 implicitly requires the representative plaintiffs to demonstrate ... that [the proposed class] is susceptible to precise definition." *Beeson,* 22 S.W.3d at 403. This, in turn, means "class members must be presently ascertainable by reference to objective criteria." *Id.* Stated differently, the class definition "should not be defined by criteria that are subjective or that require an analysis of the merits of the case." *Id.* "Deciding the merits of the suit in order to determine the scope of the class or its maintainability as a class is not appropriate." *Id.* at 404. "A proposed class definition that rests on the paramount liability question cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made." *Id.* Such a definition creates a failsafe class because the class would be bound only in the event of a judgment favorable to the plaintiffs. *Id.* at 404–05.

The trial court's ruling in *Beeson* defined the class as gas producers "whose natural gas was taken by the defendant in quantities less than their ratable proportions." *Id.* at 405. The supreme court found that this ruling was an abuse of

discretion because the certified issue was whether Intratex had taken nonratably from the producers. *Id.*

Similarly, in *Sheldon,* the supreme court found the trial court's definition impermissible. 22 S.W.3d at 454–55. There, the class was defined as those "who suffered past and/or future damage as a result of peeling or flaking paint on these vehicles caused by a defective paint process" or "who paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a defective paint process . . . ." *Id.* at 448. The trial court's definition was found to be impermissible under *Beeson* because if the paint process was not defective, then no class would exist. *Id.* at 454. Including the defective paint process theory as an element of the class definition impermissibly required a determination of the merits before the court could ensure the existence of a class. *See id.*

■ Here, the trial court's definition of the Overlimit Fee Class is defective because it creates a failsafe class. The second element of the trial court's class definition—"[a]ll past and present Capital One Bank credit card holders . . . with a customer agreement which provides for the assessment of an overlimit fee but does not expressly specify that this overlimit fee will be assessed for each billing period that the account remains over the limit"—cannot be determined by objective criteria; rather, it is stated as a legal conclusion.

There is strong disagreement between the parties about the meaning of the customer agreement. Capital One contends that the agreement "expressly specif[ies]" that the overlimit fee will be assessed for each billing period that the account remains over the limit. Rollins takes the opposite position, arguing that the unambiguous language of the customer agreement provides that the overlimit fees may be assessed only for that point in time when the account goes over its credit limit. Rollins further argues that even if the language is ambiguous, Capital One failed to cite any admissible evidence that would be relevant in the interpretation of the contract language.

We conclude that the class definition depends on the resolution of the predicate legal issue at the heart of the Rollins's breach of contract claim, *i.e.,* whether the customer agreement "expressly" provides, as claimed by Capital One, that an overlimit fee can be charged for each billing period that the account balance remains over the credit limit. That is, the trial court must make a legal determination of the merits of the issue.

Any determination by the trial court that the "plain language" of the customer agreement allows an overlimit fee to be charged for each billing period the account balance remains over the credit balance would obviate the class and preclude the proposed class members from being bound by the judgment. *See Beeson,* 22 S.W.3d at 405. If the trial court made such a determination, then it logically would follow that the class had been improperly certified because the class did not, in fact, exist. *See id.* If, on the other hand, the trial court adopted Rollins's position and determined that the customer agreement did not permit Capital One to charge the overlimit fee for every consecutive billing period, then class membership would at that time be ascertainable. In such event, Capital One would be liable for breach of the customer agreement and the litigation would be concluded on that issue. *See id.* The problem with such an approach was aptly summed up by the *Beeson* court as follows: "We do not support such a result when 'Rule [42] was never meant to be an exception to the rules of res judicata or to provide a risk-free method of litigation.'"

*Id.* at 405 (quoting *Dafforn v. Rousseau Assoc.,* 1976–2 Trade Case ¶ 61, at 219 (N.D.Ind.1976)).

Because the class definition in this case is not precise, and its members cannot be ascertained until a merits determination is made as to a predicate legal issue on which the ultimate liability of Capital One turns, we conclude that the trial court abused its discretion in certifying the Overlimit Fee Class.

Without a sufficiently defined class to bring this action, Rollins cannot currently meet Rule 42's prerequisites. *Id.* at 408. Only with a properly defined class can the explicit class-certification provisions be examined appropriately. *Id.* Accordingly, we do not reach Capital One's issues concerning the Rule 42(a) and (b) requirements as they relate to the Overlimit Fee Class. Upon remand, if the trial court finds a suitable class definition, it must also ensure that the newly defined class complies with the requirements of rule 42(a) and (b).[4] *Id.*

We sustain the portion of issue six regarding Capital One's contention that the definition of the Overlimit Fee Class is fatally defective because it creates a fail-safe class.

**PREDOMINANCE**

In issue two, Capital One complains that certification pursuant to subsection (b)(4) of Rule 42 was improper with regard to both classes because individualized issues predominate over common ones. Because we have determined that the trial court abused its discretion when it certified the Overlimit Fee Class, we discuss this issue only as it relates to the Late Fee Class.

The trial court certified the Late Fee Class under Rule 42(b)(4). By certifying

the Late Fee Class under that subsection, the trial court was required to find that "questions of law or fact common to the class predominate over any questions affecting only individual members," a criterion known as "predominance," and that "a class action is superior to other available methods for fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(b)(4).

To aid a court in determining if (b)(4) certification is appropriate, Rule 42(b)(4) establishes the following list of non-exhaustive factors to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

■ The parties in this case hotly contest the issue of predominance with regard to the Late Fee Class. In *Bernal,* the supreme court considered Rule 42(b)(4)'s predominance requirement to be "one of the most stringent prerequisites to class certification." 22 S.W.3d at 433. The predominance requirement is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Id.* at 434.

■ To determine if common issues predominate, a trial court must identify

---

4. For the reasons discussed in *Beeson,* it is not appropriate for this Court to redefine the Overlimit Fee Class. *See Intratex Gas Co. v.* *Beeson,* 22 S.W.3d 398, 406–08 (Tex.2000). Such determination is left to the trial court's discretion on remand. *Id.* at 408.

the substantive issues of the case that will control the outcome of the litigation, assess which issues will predominate, and determine if the predominating issues are, in fact, those common to the class. *Id.* The test for predominance is not whether common issues outnumber uncommon issues but, "whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* (quoting *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, writ dism'd w.o.j.)). Common issues do not predominate if, after common issues are resolved, presenting and resolving individual issues are likely to be overwhelming or unmanageable task for a single jury. *Id.* "Ideally, a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim." *Id.* (quoting *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.-Fort Worth 1986, no writ)).

As stated above, Rollins claims that Capital One breached the customer agreement by failing to credit payments on the day of receipt if the payment was received after 9 a.m. Capital One contends that the predominance requirement is not met with regard to this claim because common issues do not predominate over individual issues. Capital One asserts that, even if the class can show that Capital One's practice of failing to credit payments received after 9 a.m. breached the customer agreement, each individual claimant would still have to separately show when and how his or her payments were received to establish Capital One's liability.

█ A review of the record indicates that it would be a difficult task at best to determine when individual payments were received and available to be credited by Capital One. Capital One's internal records

do not show the time and date when it actually received a particular payment. Though a record was kept of the date that a customer's payment was credited, Capital One disposed of the envelopes in which customer payments were received and did not mark its customer's checks or payment coupons with the date and time that a payment was received by the payment processing center. Capital One maintains that, for class members to recover, each member would have to bring forward individualized proof to show when Capital One received payment. In so doing, Capital One argues that individual issues would predominate over common ones at trial. We agree.

The issue of whether Capital One's liability with regard to the late fees could be proven on a class-wide basis, as opposed to on an individual basis, was discussed at the class certification hearing. Rollins assured the trial court that offers of individualized proof to establish Capital One's liability could be avoided by using (1) evidence obtained from the courier service that picked up Capital One's mail from the post office, (2) statistical evidence, or (3) a spoliation instruction.

With regard to evidence from the courier service, Rollins's counsel explained as follows:

> I think there may be some evidence, and that evidence would come from the courier service who we have not yet deposed yet. But the courier service—they had a former one and now they have a new one. We don't know what records the courier service still has to what [sic] they dropped off, either whether it was by weight, numbers—*we just don't know.* But we're going to see what the courier service has, and *we may be able to prove it as evidence.*

(Emphasis added.)

Rollins also told the trial court that the claims could be proven class-wide by "sta-

tistical evidence that will determine what percentage of the claims are posted on the date available." Rollins proposed that the claims could be shown by "[s]tatistical evidence and evidence from courier services (present and former) to determine what percentage of claims [sic] are not posted on the date available" and "[s]tatistical review of the [Capital One's] computer accounts records to determine how many accounts charged late fees as a result of failure to post payment on date of receipt made available from post office."

Lastly, Rollins asserted that individualized proof could be avoided by applying a spoliation presumption. Rollins bases her entitlement to such presumption on Capital One's destruction of the envelopes containing its customers' payments. Relating to this theory, in a filing with the trial court, Rollins stated, "In the event that at trial [the] jury finds [Capital One's] destruction of evidence was intentional and knowing and direct causation by class member is not possible, then jury to award [sic] damages based on expert statistical studies based upon percentage of payments not posted on the day made available in relation to total late fees charged in each year."

With regard to how the late fee claims would be tried, the trial court ordered as follows:

> Liability for the breach alleged by the Late Fee Class may initially require the Court to analyze and determine several legal issues, specifically, construction of the contract and consideration of any class-wide defenses Capital One may assert. *The Court may also be required to make legal determinations pertaining to Plaintiffs' methodology for proving the Late Fee Class claims and Plaintiffs' spoliation allegations.* After determination of these matters of law, disputed fact issues remaining for trial by jury

may include (1) whether imposition of the 9 a.m. cut-off resulted in payments not being posted on the day made available from the post office, if so (2) how tardy was the crediting of the payment as a result of Capital One's mail handling procedures, and (3) which class members are entitled to recover damages based upon the expert evidence. The precise method for ascertaining, and the procedures for paying, any damages will depend on determinations made by the finder of fact. In particular, the jury's acceptance or rejection of expert testimony, and the jury's findings concerning Plaintiffs' expoliation [sic] claims, will impact the assessment of damages. At the onset, however, Plaintiffs propose that the universe of class members which may have been damaged by Capital One's procedures can be ascertained by expert statistical evidence, and the individuals out of that group actually harmed can be determined through a proof-of-claims procedure.

(Emphasis added.)

On appeal, with regard to resolving the predominance problem presented by the late fee claim, Rollins states that the certification order "allows [Rollins] to employ statistical methods for establishing liability and damages using data from Capital One and expert conclusions derived from examination of this data." However, this misstates the order. The certification order provides that the trial court "may also be required to make legal determinations pertaining to Plaintiffs' methodology for proving the Late Fee Class claims and Plaintiffs' spoliation allegations." We can only assume that the phrase "Plaintiffs' methodology" refers to the statistical methodology proposed by Rollins. Moreover, the order does not "allow [Rollins] to employ statistical methods for establishing liability and damages"; rather, it states that the

trial court is reserving the decision regarding the propriety of the statistical methodology and spoliation claim to a later day.

■ Rollins failed to make even a cursory showing that using statistical evidence was a viable means to obviate the need for individualized proof. Other than the mere assurances of Rollins's counsel that statistical methods could be used to establish liability and damages, Rollins failed to present any expert testimony or other evidence to the trial court to establish that such methodology was even feasible. Rollins proposed that the data on which the statistical methodology was based would include information obtained from Capital One's courier service and Capital One's own records. However, at the time of the certification hearing, Rollins's counsel admitted that it was unknown what, if any, useful information could be obtained from the courier service. Rollins also failed to explain how the data found in Capital One's records could be used to extrapolate when Capital One received its customers' payments. To the contrary, it is undisputed that Capital

One's records do not indicate the time and date a payment was actually received.[5] Thus, at the time the trial court signed the certification order, it was not determinable whether statistical evidence could overcome the need for individualized proof to be offered at trial.[6]

■ Likewise, Rollins failed to adequately show how a spoliation instruction could be utilized. Rollins bases her spoliation theory on Capital One's admitted destruction of the envelopes in which it received its customers' payments. However, at the class certification hearing, the trial court correctly observed that the envelopes show only the *date* the *post office* received the payment, not the specific *time* *Capital One* received the payment. *See Ordonez v. M.W. McCurdy Co., Inc.*, 984 S.W.2d 264, 273 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (stating intentional spoliation of evidence *relevant* to case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator). Although not entirely clear from either the record or the briefing,

---

**5.** Evidence that is insufficient to show an element necessary to establish liability in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs. *See Schein v. Stromboe*, 46 Tex. Sup.Ct. J. 103, 114, 102 S.W.3d 675, 693–94 (October 31, 2002). As the *Schein* court stated,

> Inescapably individual differences cannot be concealed in a throng. The procedural device of a class action eliminates the necessity of adducing the same evidence over and over again in a multitude of individual actions; it does not lessen the quality of evidence required in an individual action or relax substantive burdens of proof.

*Id.*

**6.** We note that no Texas court has allowed the use of statistical evidence to overcome the problem of predominance. To the contrary, the Fourteenth Court of Appeals has recently held that the use of statistical evidence as a

substitute for individual evidentiary inquiries is improper under Rule 42(b)(4). *See Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 561 (Tex.App.-Houston [14th Dist.] 2002, no pet.). As noted by Rollins, presentation of statistical evidence to establish liability by federal courts has been limited to discrimination cases. *See, e.g., Bell v. E.P.A.*, 232 F.3d 546, 552–53 (7th Cir.2000); *Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 279 (11th Cir.1989). However, this case involves breach of contract, not discrimination. Allowing Rollins to offer statistical evidence to establish liability would in essence shift the burden of proof to Capital One and severely handicap its defense of the class action. The *Bernal* court noted that the class-action device may not alter the parties' burden of proof, right to a jury trial, or substantive prerequisites to recovery. 23 S.W.3d at 435–36. Basic to the right to a fair trial is that each party have the opportunity to adequately and vigorously present any material claims and defenses. *Id.* at 437.

Rollins appears also to contend that a spoliation instruction would be appropriate because Capital One failed to create records showing the time a particular payment was received. However, spoliation is defined as the *destruction* of evidence, not the failure to *create* evidence. *See Brewer v. Dowling,* 862 S.W.2d 156, 158 n. 2 (Tex. App.-Fort Worth 1993, writ denied) (citing BLACK'S LAW DICTIONARY 1257 (5th ed.1979)). Thus, insofar as the record reflects, Rollins's spoliation theory is not shown to be a viable method that will replace the need for individualized proof to be offered by each class member.

■ In conducting the initial evidentiary review, the trial court must undertake a cautious approach to certification and rigorously scrutinize whether the requirements of Rule 42, particularly the predominance requirement of subsection (b)(4), have been met before ruling on class certification. *Bernal,* 22 S.W.3d at 435. In making this rigorous analysis, the court must consider how the claims will likely be tried so that conformity with Rule 42 can be meaningfully evaluated. *Id.* The court is not permitted to adopt a "certify now and worry later" approach to certification. *Id.*

■ We recognize that the decision regarding class certification occurs early in the litigation process before many issues in the case have been fully developed. And we appreciate the difficult task that a trial court often faces in balancing the requirements of the rules governing certification with the challenges presented by the case's infancy. However, as noted above, a trial court must perform a rigorous analysis before making its preliminary determination about whether the issue of predominance can be resolved. *Bernal,* 22 S.W.3d at 435. If the proponent of the class certification fails to present the trial court with sufficient evidence or information to make that determination, then the trial court should not certify the class at that time. As the Texas Supreme Court warned in *Bernal,* a trial court cannot rely on mere assurances of counsel that any problems with predominance will be overcome. *Id.* Rigorous analysis is particularly important when, as here, the theories being advanced serve to alter the burdens of proof and restrict a defendant's ability to defend itself against liability.

By failing to make a determination regarding the viability of Rollins's statistical methodology and spoliation theories, the trial court adopted an approach disavowed by *Bernal* and improperly relied on counsels' mere assurances that the predominance problem could be overcome by statistical evidence or by a spoliation instruction. Thus, we hold the trial court abused its discretion in certifying the Late Fee Class.

We sustain Capital One's issue two as it relates to the Late Fee Class.

## CONCLUSION

We reverse the trial court's certification order and remand the cause to the trial court with instructions to decertify the Overlimit Fee Class and the Late Fee Class.[7] Our action is without prejudice to a further attempt by Rollins to seek certification of either class.

---

**7.** Due to our disposition of the above issues, we need not address Capital One's remaining issues. *See* TEX.R.APP. P. 47.1.