# Supreme Court of Texas

═══════════

No. 21-0874

═══════════

American Campus Communities, Inc., et al.,

*Petitioners,*

v.

Beth Berry, et al., Individually and on Behalf of All Others
Similarly Situated,

*Respondents*

═══════════════════════════════

On Petition for Review from the
Court of Appeals for the Third District of Texas

═══════════════════════════════

**Argued October 5, 2022**

JUSTICE BLACKLOCK delivered the opinion of the Court.

Certification of a plaintiff class under Rule 42 converts a conventional lawsuit into a far more complicated and consequential case. In the history of a lawsuit, crossing the class-certification Rubicon fundamentally changes the nature of the proceeding, imposing unique burdens on the judicial system and raising the stakes for the parties and their lawyers, often exponentially so. For these reasons, Rule 42 and this Court's precedent require a rigorous and searching judicial analysis

of the plaintiffs' claims to ensure, prior to certification, that the claims are suitable for class resolution. Essential to this analysis is a thorough understanding of the substantive law governing the proffered class claims. Only by properly understanding the legal basis for the claims asserted can a court reliably determine the suitability of those claims for class-action litigation.

In today's case, we are asked what happens when the proposed class claims are facially defective as a matter of law. In other words, when the claims for which the plaintiffs seek class certification have no basis in law, even taking all the allegations as true, can class certification nevertheless be granted? The answer is no. No valid purpose is served by authorizing class-wide litigation of a legally baseless theory of liability on which the plaintiffs cannot recover no matter what facts come to light during litigation. The rigorous analysis of the claim required by Rule 42 cannot meaningfully or usefully be performed on a facially defective claim. In such cases, including this case, class certification must be denied.

## I.

American Campus Communities, Inc. and related entities own and manage dozens of residential properties. Four former tenants sued American Campus, alleging that American Campus violated section 92.056(g) of the Property Code by omitting required language from its leases. Sections 92.056 and 92.0561 of the Code create various remedies for tenants whose landlords fail to adequately repair their properties. TEX. PROP. CODE §§ 92.056, 92.0561. Section 92.056(g), the focus of this litigation, requires leases to "contain language in underlined or bold

2

print that informs the tenant of the remedies available under this section [92.056] and Section 92.0561." *Id*. § 92.056(g).

The plaintiffs asked the district court to certify a class of more than 65,000 former American Campus tenants whose leases omitted the language required by section 92.056(g).[1] The plaintiffs claim that the missing lease language makes American Campus strictly liable to each class member for a statutory "civil penalty of one month's rent plus $500." *Id*. § 92.0563(a)(3). They further claim that the absent lease language amounts to a statutorily prohibited contractual waiver of American Campus's repair obligations, which, if true, would subject American Campus to "actual damages, a civil penalty of one month's rent plus $2,000, and reasonable attorney's fees." *Id*. § 92.0563(b). The plaintiffs seek an unspecified nine-figure recovery, stemming purely from the omitted lease term.[2]

Although some of the named plaintiffs allege deficiencies in American Campus's repair of their particular apartments, they do not allege that other class members have experienced similar problems, and they did not seek certification of a class of tenants whose apartments have not been adequately repaired. Nor do they allege that any class member suffered financial damage caused by inadequate repairs or inadequate lease terms. Instead, they sought class certification based

---

[1] American Campus admits that, for a time, its leases did not contain the required language. After this suit was filed in 2018, American Campus added the provision to its current and future leases.

[2] As a rough estimate of the potential liability, 65,000 violations times $2,500 in penalties per violation equals $162,500,000. One named plaintiff testified that the true amount sought is far higher.

3

on the theory that the omission of the statutorily required lease language, standing alone, entitles each class member to recover statutory damages, penalties, and attorney's fees under sections 92.0563(a)(3) and 92.0563(b).

In addition to opposing class certification in the district court, American Campus moved for summary judgment. Among other grounds, it argued that the Property Code does not create the strict liability envisioned by the plaintiffs for the mere omission of section 92.056(g)'s required lease term. American Campus reiterated these points in its response to the class-certification motion, in which it argued that the lawsuit amounted to an "ineffectual[] attempt to manufacture strict-liability requirements and civil-penalty remedies that do not exist under a plain reading of the Texas Property Code." The district court denied American Campus's motion for summary judgment and then granted the plaintiffs' motion for class certification. American Campus appealed the class-certification order. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3).

The court of appeals affirmed a modified version of the certification order, which omits the plaintiffs' request for class-wide injunctive relief but authorizes class-wide litigation of the claims alleging statutory strict liability for the missing lease term. 646 S.W.3d 857, 872 (Tex. App.—Austin 2021). The court of appeals considered itself prohibited, in this interlocutory appeal, from considering American Campus's argument that the proffered class claims are legally baseless because the Property Code does not create strict liability for omission of the section 92.056(g) lease term. *Id*. at 866. This argument

4

about the nature of the plaintiffs' claims was, in the court of appeals' view, the proper subject of a non-appealable summary judgment motion, not an appealable class-certification motion. *Id.*[3] If this is correct, then American Campus's argument regarding the meaning of the Property Code cannot be passed upon by an appellate court until after final judgment, and class-wide litigation may proceed without regard to whether the plaintiffs are correct about the nature or existence of the class claims.

American Campus petitioned for review in this Court. It contends, among other arguments, that the plaintiffs' claims have no basis in the Property Code or in any other source of law and therefore cannot form the basis of a proper class-certification order. We granted the petition.

## A.

The initial question is whether, in ruling on a class-certification order, a court may consider the defendant's argument that certification should be denied because the plaintiff has not put forward a legally viable theory of the defendant's liability to the class. The court of appeals approached this question by guarding against the encroachment into class-certification appeals of merits questions commonly associated

---

[3] Although denials of summary judgment are generally not appealable, "controlling question[s] of law" may be appealed with the permission of the trial court if the appeal "may materially advance the ultimate termination of the litigation." TEX. CIV. PRAC. & REM. CODE § 51.014(d). When doubt exists regarding the law governing a claim on which class certification is sought, a permissive appeal of a summary judgment order may be one available pathway for clarifying the law prior to a decision on class certification. *See, e.g., Mosaic Baybrook One, L.P. v. Simien*, ___ S.W.3d ___, slip op. at 27 (Tex. Apr. 21, 2023).

5

with non-appealable summary judgment motions or motions to dismiss. The plaintiffs' briefing echoes that concern. American Campus and its supporting amici urge a contrary approach, under which the more pressing concern should be to guard against authorizing costly class-action litigation of legally baseless claims. They argue that scrutiny of the legal underpinnings of the alleged class claim prior to certification is required, not prohibited, by Rule 42 and that legally baseless claims should never be the foundation from which parties and courts undertake the expense and trouble of class-action litigation. Under this view, the rigorous scrutiny of the plaintiffs' claims required at the class-certification stage is wasteful—and appeal of it doubly wasteful—if the claim being scrutinized for its suitability for class resolution is not actually a claim on which the plaintiffs could ever recover. As explained below, we find the latter approach more consistent with our precedent, with the procedural rules, and with the efficient use of judicial resources.

Courts applying Rule 42 "must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites to certification have been met." *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). An essential part of this "rigorous analysis" involves "knowing how the claims can and will likely be tried." *Id.* "A trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated." *Id.* The required trial plan cannot be based merely on "assurances of counsel" about what the litigation's future holds. *Id.* Instead, the court must itself "understand the claims, defenses, relevant

facts, *and applicable substantive law* in order to make a meaningful determination of the certification issues." *Id.* (emphasis added).

Just as a district court asked to certify a class must "understand" the "applicable substantive law in order to make a meaningful determination of the certification issues," a court of appeals likewise must analyze the claim's suitability for class resolution in light of the "substantive law" governing the claim. *Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 72 (Tex. 2003) (cleaned up). "It is settled that in reviewing a class certification order, we must evaluate 'the claims, defenses, relevant facts, *and applicable substantive law.*'" *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 316 (Tex. 2008) (Jefferson, C.J., dissenting) (quoting *Bernal*, 22 S.W.3d at 435) (emphasis added).

It is true, as the court of appeals observed, that disputed questions of law about the nature of the claim would normally be addressed in dispositive motions that cannot immediately be appealed if they are denied. But this does not prohibit a court hearing a class-certification appeal from considering disputes of law that are necessary to discharge its duty under Rule 42 to properly understand the law governing the claim. To the contrary, such disputes must be addressed in a class-certification appeal when properly raised. *Hankins*, 111 S.W.3d at 72–73 ("The substantive law . . . must be taken into consideration in determining whether the purported class can meet the certification prerequisites under Rule 42.").

In *Union Pacific Resources Group, Inc. v. Hankins*, for example, the court of appeals declined to consider the impact of an intervening

7

decision of this Court that affected the relief available on the plaintiffs' claim. The court of appeals had reasoned that "an appellate court's review of a class certification order should not include examining the merits of claims or defenses" which must "remain for resolution at another stage of litigation." *Id.* at 72 (cleaned up). We disapproved of that approach because it caused the court of appeals to "ignore applicable substantive law crucial to understanding the claims and defenses in the case." *Id.* (cleaned up). Although the required analysis of the governing law at the class-certification stage "is far less searching than a trial on the merits," the correct "substantive law" governing the claim "must be taken into consideration." *Id.* at 72–73. The court of appeals had an obligation to correctly identify and understand the governing law, which it had not discharged. We proceeded to analyze the claim in light of a correct understanding of the law, which resulted in reversal of class certification. *Id.* at 75.

In *Exxon Mobil Corp. v. Gill*, we again considered whether the lower courts had correctly construed one of our decisions when ruling on class certification. 299 S.W.3d 124, 127–28 (Tex. 2009). We noted that "while deciding the merits of the suit in order to determine . . . its maintainability as a class action is not appropriate . . . the substantive law . . . must be taken into consideration in determining whether the purported class can meet the certification prerequisites." *Id.* at 126 (cleaned up). We held that the lower courts had not correctly understood the law, and we concluded that "[w]hen a class has been certified based on a significant misunderstanding of the law . . . 'remand to the trial court is appropriate so that it may determine the effect . . . on the

8

requirements for class certification.'" *Id*. at 129 (quoting *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 778 (Tex. 2005)).

This Court's precedent emphasizes repeatedly that judicial analysis of whether a claim satisfies Rule 42 must be "meaningful" and "rigorous." *E.g.*, *Bernal*, 22 S.W.3d at 435; *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 688 (Tex. 2002); *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 555 (Tex. 2004). Meaningful, rigorous analysis of a claim necessarily entails the adoption of some coherent understanding of the law governing the claim. Whether it is the plaintiffs' understanding of the claim, the defendant's understanding, or a third option on which the court settles, a Rule 42 analysis cannot usefully be undertaken without identifying the claim's nature and requirements based on a correct understanding of the applicable law. Here, however, neither the district court nor the court of appeals adopted an understanding of the substantive law governing the plaintiffs' proffered class claims, instead deferring this essential task to another day, after certification. This was error. "[C]ourts can hardly evaluate the claims, defenses, or applicable law without knowing what that law is." *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004).

The district court's class-certification order notes the parties' disagreement about the nature—indeed, the very existence—of the plaintiffs' statutory strict-liability claims. The order indicates, however, that the court viewed legal questions such as whether the claims exist and what the claims require not as predicate questions essential to a proper Rule 42 analysis, but instead as among the "questions of law or

9

fact common to the class." TEX. R. CIV. P. 42(a). Thus, the unresolved doubt about whether the Property Code actually creates the cause of action asserted by the plaintiffs became a reason to *grant* class certification—so that this common question of law could be resolved uniformly. This is an example of the "certify now and worry later" approach to class certification, which we have rejected on multiple occasions. *Bernal*, 22 S.W.3d at 435; *Peake*, 178 S.W.3d at 776–77. The well-established requirement that courts must understand the substantive law applicable to a claim before ruling on class certification is meaningless if legal questions necessary to determining the existence or elements of the claim need not be considered until after certification.

The court of appeals likewise disclaimed responsibility to correctly understand the law governing the proffered class claims. The court instead held that it could not address this question, which it considered a matter of summary judgment and therefore outside the scope of the interlocutory appeal of the class-certification order. 646 S.W.3d at 865. But in refusing to consider the defendants' arguments about the nature and existence of the claims, the court of appeals essentially defaulted to the plaintiffs' understanding of the claims. It proceeded to analyze the amenability to class resolution of the claims as understood by the plaintiffs—without ever asking whether that understanding accurately interprets Chapter 92 of the Property Code, the substantive law governing the claims. We have held, however, that at the class-certification stage, "a court must go beyond the pleadings" to "understand" the "applicable substantive law." *Hankins*, 111 S.W.3d at 72 (cleaned up). The question is not whether the plaintiff has pleaded

10

and argued a claim that, if it exists, would be suitable for class resolution. The question, instead, is whether, under the "applicable substantive law," the claim—as the law, not the plaintiff, defines it—is truly suitable for class resolution.

The courts' obligation to understand the law governing a proposed class claim comes not just from our precedent but from Rule 42 itself, which the precedent interprets. Correctly identifying the elements of the claim is an essential, foundational step in the class-certification process, which cannot be put off until after certification. *See* TEX. R. CIV. P. 42(c)(1)(D)(i). Likewise, a court cannot know whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class" without knowing what the claims actually are. TEX. R. CIV. P. 42(a). And we cannot know whether "questions of law or fact common to the members of the class predominate" without accurately identifying what those questions will be when the claim is litigated under a correct understanding of the law. TEX. R. CIV. P. 42(b)(3).[4]

It serves no constructive purpose to ask only whether the claim *as theorized by the plaintiffs* satisfies requirements such as typicality or predominance. Ultimately, the claim must be tried based on a correct understanding of the law. It is of course possible to conduct litigation based on an incorrect understanding of the law, but any resulting

---

[4] Deferring legal questions about the nature and existence of the class claims until after certification leaves both the defendant and the absent class members without a clear understanding of the class claims. Absent class members may not be able to make a well-informed decision whether to opt out if they do not yet know which class claims are legally viable.

11

judgment will be reversed, and the parties will be made to relitigate the case based on the correct law. Thus, to know whether common questions will ultimately predominate—not in a defective proceeding based on the incorrect law, but in a valid proceeding whose result will survive appeal—we must know what the law is. Again, as we observed in *Compaq Computer Corp. v. Lapray*, "courts can hardly evaluate the claims, defenses, or applicable law [as required by Rule 42] without knowing what that law is." 135 S.W.3d at 672.

## B.

The plaintiffs rely heavily on this Court's statement in *Intratex Gas Co. v. Beeson* that "[d]eciding the merits of the suit in order to determine the scope of the class or its maintainability as a class action is not appropriate." 22 S.W.3d 398, 404 (Tex. 2000). We have since repeated that statement, and we do not overrule it here, as far as it goes. *Gill*, 299 S.W.3d at 126. Although we have on occasion cautioned against "deciding the merits of the suit" at the class-certification stage, we have never confronted the question presented by this case—whether a class claim that is facially defective as a matter of law may nevertheless survive a class-certification appeal and proceed towards futile and wasteful class-wide litigation.

The issue in *Intratex*, for example, was not whether questions of law about the nature or existence of the claim must be avoided at the class-certification stage, lest courts prematurely decide the merits. *Intratex* involved a class defined essentially as "anyone injured by the defendant." As a result, there was "no way of ascertaining whether a given person [was] a member of the class until a determination of

12

ultimate liability as to that person [was] made." *Intratex*, 22 S.W.3d at 404. We held it was improper to define a class in a way that premised a person's class membership on the merits of his claim. *Id.* at 405.[5] We did not hold that courts following our instruction to subject class claims to a rigorous pre-certification analysis based on the governing law must abandon this effort when it overlaps with the merits. To the contrary, we acknowledged that consideration of the "legal issues comprising the plaintiff's cause of action" may be required in order for the court "to make a reasoned determination of the certification issues." *Id.* at 404 (cleaned up). We have often similarly observed that overlap with the merits is frequently unavoidable in a Rule 42 analysis. *Gill*, 299 S.W.3d at 126 (collecting cases).

In *Southwest Refining Co. v. Bernal*, we wrote that "it may not be an abuse of discretion to certify a class that could later fail." 22 S.W.3d at 435. By observing that not all potential merits defects undermine class certification, we did not hold that a fundamental misunderstanding of the nature or elements of the class claim does not undermine class certification. Instead, we wrote that a "certification order must indicate how the claims will likely be tried so that conformance with Rule 42 may be meaningfully evaluated." *Id.* Such a "meaningful evaluation," which will often overlap to some extent with the merits, is entirely useless if the claim is facially defective such that, under a correct view of the law, it will *not* "likely be tried."

---

[5] *Accord Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 454 (Tex. 2000) (following *Intratex*, rejecting a proposed class definition based "on a determination of the merits" of each class member's claim, which improperly "creates a fail-safe class").

Finally, in *State Farm v. Lopez*, we reversed the class-certification order because the lower court "certif[ied] a class without formulating a trial plan confirming that it has rigorously analyzed the requirements of Rule 42." 156 S.W.3d at 557. In addition to seeking reversal of the class-certification order on this ground, State Farm also argued that the class claims failed on the merits for various reasons, including facial legal defects. *Id.* We declined to reach those issues, but we neither said nor suggested that facial legal defects in a class claim cannot be considered in a class-certification appeal. We observed that the district court had not yet had the opportunity to address the legal questions raised by State Farm, we suggested we could perhaps have reached some of those questions, but we elected not to reach them "[g]iven the state of the record." *Id.* In today's case, by contrast, the district court has already denied a summary judgment motion challenging the plaintiffs' understanding of the class claims, and the issue is fully presented by the parties for our review.

To be sure, the court's task at the class-certification stage is not to set out to decide the merits of the lawsuit. Instead, the court's task is to correctly understand the law governing the nature and elements of the claim and to gauge the claim's suitability for class resolution on the basis of that understanding. Rule 42's provisions are wholly consistent with a court's obligation, as part of its rigorous analysis of the class claim, to understand the law applicable to the claim and to determine whether the claim inexorably must fail under that law. If a careful assessment of the law governing the claim indicates that the claim is legally baseless, the court need not shy away from that conclusion

14

merely because it implicates the merits. Ultimately, the court's duty under Rule 42 to conduct a meaningful analysis of the proposed claim under the governing law is more fundamental than any procedural preference for avoiding premature resolution of the merits.

Identifying the substantive law governing the claim can be a clarifying exercise. It may indicate that one side or the other is likely, perhaps certain, to lose. This overlap with the merits is not a reason for courts to avoid undertaking the rigorous analysis required by Rule 42 and our precedent. Rigorous, meaningful judicial analysis of the law governing a lawsuit at an early stage of the case helps parties to correctly understand their legal rights and to better analyze prospects for a just settlement. The law requires rigorous judicial analysis of class claims prior to certification to ensure that the extraordinary class-action mechanism is reserved for genuinely well-suited cases. There is no exception to this requirement for cases in which correctly understanding the applicable law reveals which party is likely to win.

To the extent that interlocutory appeal of class-certification orders facilitates early answers from appellate courts to purely legal questions about the law governing the class claims, this provides a benefit to both the parties and the courts, all of whom avoid wasting time and resources on misconceived proceedings that are doomed to reversal after a later appeal. Courts cannot be blind to the reality that certifying a class may, practically speaking, dictate the outcome of the litigation by fundamentally changing the parties' incentives to settle. Certifying a class based on a non-existent or mistakenly conceived claim—a claim on which the class could never validly recover regardless

15

of the facts—raises the stakes of a lawsuit that ought to have no stakes at all. Class litigation of such a defective claim is plainly not "superior to other available methods"—such as Rule 91a motions—"for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. 42(b)(3).

We held in *Gill* that "[w]hen a class has been certified based on a significant misunderstanding of the law," reversal of class certification and remand for reconsideration is required. 299 S.W.3d at 129. In this case, rather than misunderstanding the law governing the claims, the lower courts declined to adopt any understanding of the claims at all, instead deferring that task to later in the litigation. This error likewise requires reversal of the class-certification order, which was entered without the rigorous analysis required by Rule 42 and our precedent.

## II.

We confronted a similar situation in *Hankins*, in which the court of appeals deferred its responsibility to understand the governing law at the class-certification stage. In that case, we analyzed the law ourselves and disposed of the appeal rather than remanding to the court of appeals. We will do the same here.

Section 92.056(g) of the Property Code provides: "A lease must contain language in underlined or bold print that informs the tenant of the remedies available under this section and Section 92.0561." The Legislature's creation of this legal right, however, does not automatically authorize a suit to vindicate the right. *See Brown v. De La Cruz*, 156 S.W.3d 560, 568–69 (Tex. 2004). Instead, we must determine whether the statute takes the additional step of authorizing a lawsuit to enforce the right the statute creates. *Id.* at 565.

16

The plaintiffs suggest two avenues by which Chapter 92 might authorize a claim premised solely on the omission of the section 92.056(g) lease term. First, they point to section 92.0563(a)(3): "A tenant's judicial remedies under Section 92.056 shall include . . . a judgment against the landlord for a civil penalty of one month's rent plus $500[.]" Section 92.056 includes subsection (g). As the plaintiffs see it, any violation of section 92.056, including a violation of subsection (g), gives rise to "judicial remedies under Section 92.056," including the civil penalty. This is incorrect.

Section 92.0563 attaches a civil penalty to "[a] tenant's judicial remedies under Section 92.056." We must therefore consult section 92.056 to determine what qualifies as a "judicial remed[y] under Section 92.056" and whether a claim for absent lease language is among those remedies. Section 92.056(b) provides: "A landlord is liable to a tenant as provided by this subchapter if" the requirements of subsections (b)(1) through (b)(6) are satisfied. Nothing in subsection (b) mentions required lease language. Instead, subsection (b) creates a limited cause of action for a tenant who is dissatisfied with his landlord's efforts to repair a dangerous condition. This is the sole "judicial remed[y] under Section 92.056." Subsection (a) is a limitation on the liability created by subsection (b). Subsections (c) and (d) provide greater detail about when the liability-triggering requirements of subsection (b) are satisfied. Subsections (e) and (f) describe remedies available to a tenant who establishes the landlord's liability under subsection (b).

Subsection (g), the only provision the plaintiffs allege American Campus violated on a class-wide basis, appears as a stand-alone

17

requirement at the end of section 92.056 and plays no role in the cause of action described by subsections (a) through (f). Indeed, the Legislature added subsection (g) to the statute in 2007 without giving any indication that this new lease-language requirement affects the pre-existing judicial remedy authorized by the rest of section 92.056. Act of May 25, 2007, 80th Leg., R.S., ch. 917, § 5, sec. 92.056, 2007 Tex. Gen. Laws 2316, 2317. The "judicial remedies under section 92.056," which include the civil penalties sought by the plaintiffs, do not include a claim for omitted lease language.

Second, the plaintiffs rely on section 92.0563(b):

> A landlord who knowingly violates Section 92.006 by contracting orally or in writing with a tenant to waive the landlord's duty to repair under this subchapter shall be liable to the tenant for actual damages, a civil penalty of one month's rent plus $2,000, and reasonable attorney's fees.

The plaintiffs contend that American Campus's omission of the section 92.056(g) lease term describing tenants' repair rights amounts to "contracting orally or in writing with a tenant to waive the landlord's duty to repair under this subchapter." This is incorrect. The "landlord's duty to repair under this subchapter" is a creature of statute, not of contract. This statutory duty binds landlords whether or not it also appears in a lease. A lease's failure to mention the statutory duty is in no sense a waiver of the statutory duty. Section 92.0563(b) authorizes a claim against a landlord who knowingly contracts to waive his statutory duties, not a claim against a landlord who fails to state his statutory duties in his leases.

18

For these reasons, the plaintiffs' understanding of the claims authorized by Chapter 92 cannot be squared with the statutory text. The statute authorizes lawsuits over defective or untimely repairs, under certain circumstances. And it authorizes lawsuits against landlords who contract to waive their statutory obligations. It does not authorize lawsuits, or any kind of monetary recovery, against landlords who omit from their leases the provision required by section 92.056(g). It is surely true, as the plaintiffs point out, that omitting the required lease language might leave tenants unaware of their repair rights and therefore less likely to assert rights the Legislature has afforded them. And it is surely true that authorizing lawsuits for omission of the lease term would encourage compliance by landlords and more robustly empower tenants. These are considerations for the Legislature, which has chosen to write a statute that provides multiple judicial remedies for tenants but does not authorize lawsuits for the mere omission from a lease of the provision required by section 92.056(g).[6]

In the end, a proper understanding of the substantive law applicable to the proposed class claims indicates that no such claims exist. Rule 42, however, required the district court to identify the elements of the claims. *See* TEX. R. CIV. P. 42(c)(1)(D)(i). Of course, a

---

[6] American Campus argues that the mere omission of a lease term is not a concrete injury sufficient under the Constitution to confer standing on a plaintiff. The U.S. Supreme Court has recently wrestled with similar arguments regarding legislative attempts to confer standing based on "informational injury" alone. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). We need not address these arguments here, however. The Legislature has not attempted to authorize lawsuits based solely on omitted lease language, so we have no reason to decide whether any such attempt would implicate constitutional limitations on the judicial power.

19

claim that does not exist has no elements. Rarely is the folly of certifying a class based on an improperly theorized claim more vivid than when, as here, the class's proffered claims are no claim at all. Because the tenants' proposed class claims have no basis in law, the "rigorous analysis" necessary to certify a class cannot meaningfully be performed, and reversal of the class certification is required. TEX. R. CIV. P. 42(a).

American Campus correctly notes that the claim section 92.056 actually authorizes is particularly ill-suited for class resolution. Each claim under section 92.056 for inadequate repairs will turn on the individual circumstances of each claimant, so individual issues would predominate over any class-wide issues. However, we need not analyze the suitability for class certification of the claim the plaintiffs *could have* alleged under Chapter 92. The issue is whether the claims the plaintiffs did allege, properly understood in light of the law governing the claims, satisfy the prerequisites of Rule 42. It borders on the farcical to ask whether class-wide questions will predominate over individual questions in the litigation of claims that do not exist. When the proposed class claims have no basis in law, as is the case here, class certification must be denied so that "other available methods for the fair and efficient adjudication of the controversy" may be pursued. TEX. R. CIV. P. 42(b)(3).

### III.

The court of appeals' judgment is reversed, the district court's order certifying a class is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

20

                                    _____

                                    James D. Blacklock
                                    Justice

**OPINION DELIVERED:** April 21, 2023